UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MATTHEW BISSONNETTE,<br><br>Plaintiff,<br><br>-against-<br><br>KEVIN PODLASKI and<br>CARSON BOXBERGER, LLP,<br><br>Defendant. | Civil Action No.: 1:14-CV-8810 (JMF)<br><br>**AFFIDAVIT OF MATTHEW BISSONNETTE IN SUPPORT OF RESPONSE TO MOTION TO DISMISS** |

STATE OF NEW YORK    )
                                          )    ss.:
COUNTY OF NEW YORK )

**Before me the undersigned authority on this day personally appeared Matthew Bissonnette who after being by me first duly sworn deposes on his oath and states as follows:**

1. My name is Mathew Bissonnette. I am over the age of 21 and I am fully capable, competent and authorized to make the following statements. The factual matters set forth herein are within my personal knowledge or upon my best information and belief and are true and correct.

2. In late 2011, I discussed the idea of writing a book about my career as a Navy SEAL with Elyse Cheney. These discussions culminated in several contracts to do business in New York. One is my contract with Ms. Cheney. A true and correct copy of my contract with her, dated December19, 2011, is attached to the Declaration of Randy Johnston, my attorney. This contract designates Ms. Cheney as my "sole and exclusive agent" with respect to any book length works I might write. My first book was *No Easy Day* (the Book).

3. Ms. Cheney served as my sole and exclusive agent for all matters related to the Book. She and her company, Elyse Cheney Literary Associates LLC are residents of and located in New York. To the best of my information and belief, all her services as my agent were performed in New York.

4. In addition to my contract with Ms. Cheney, I also entered into a contract with Dutton, an imprint of Penguin Publishing Group, a division of Penguin Random House LLC (formerly, Penguin Group (USA) Inc.), 375 Hudson Street, New York, New York 10014 (the Publisher or Dutton) for the publication of the Book. A true and correct copy of this contract with Dutton is attached to the Declaration of Randy Johnston. My identity is concealed in the Dutton contract, but I signed and gave to Dutton a separate document in which I adopt this contract. They are obligated to keep this document secret and retain it in a vault they control. That document and the engagement letter with Defendants are the only places my identity was revealed.

5. Pursuant to the contract with Dutton, I was obligated to submit a book length work of original writing that was free of classified or confidential information and was in compliance with my various secrecy contracts with the U.S. government. Defendants were hired to represent me in connection with this business venture, as described in more detail below.

6. From the beginning, I knew there would be issues involving confidential information. I knew I was not in a position to interpret contracts or decide on my own what information might violate my confidentiality obligations. I was committed to not having the inadvertent disclosure of such information jeopardize the security interests of the United States or place my Navy SEAL brothers in jeopardy. I also did not want to expose myself or those helping me with the Book to civil and/or criminal liability. Ms. Cheney discussed this with the

Publisher and the Publisher agreed to pay an amount towards the cost of an attorney to advise me on this subject.

7. Among the many activities Ms. Cheney performed on my behalf was assisting in the selection of counsel to provide me with legal advice on my obligations of confidentiality to the U.S. government and my contractual obligation to the publisher to provide a manuscript free of information prohibited from disclosure by the U.S. government.

8. After I retained Defendants, I instructed them to communicate with Ms. Cheney as my agent. As my agent, she had numerous communications with Defendants while they were acting as my attorney. In fact, the majority of communications Defendants had *with me* were actually Defendants communicating with Ms. Cheney – in New York - as my agent. These communications are documented in the bills of Defendants and in various emails, true and correct copies of which are attached to the Declaration of Randy Johnston.

9. I hired Defendants to give me legal advice on a New York business project (the Book). They gave me this legal advice when they communicated it to me via my agent in New York. Mr. Podlaski and his firm were aware from the beginning that they were hired to advise me on contracts in New York involving the Book. Mr. Podlaski was aware at all times that his representation of me required that he deal with Ms. Cheney as my agent.

10. Mr. Podlaski reviewed, commented on drafts of, and proposed language for the contract with Dutton. He was aware that Dutton was headquartered in New York and that the Dutton contract was governed by the laws of New York. Mr. Podlaski was aware that this Dutton contract required me to provide a publishable manuscript to Dutton, free of classified or otherwise sensitive information. He knew my ability to honor this provision of the Dutton contract was wholly dependent upon him doing the job for which he was hired.

11. Mr. Podlaski's first job was to answer the legal question of whether I was obligated to submit the Book to a governmental agency for a prepublication review before submitting the Book to the New York publisher. Mr. Podlaski told Ms. Cheney in one of their early phone calls (and then repeated this advice often) that prepublication review was optional for me as a retired SEAL Mr. Podlaski said that if we did submit the Book, it would be held up for months and he recommended against doing so. He said he could vette the Book himself to remove any classified, confidential, or otherwise sensitive information.

12. As my attorney, Mr. Podlaski also had numerous communications with agents and representatives of Dutton in New York. On information and belief, the communications described in the fee statements between Mr. Podlaski and the individuals referenced below occurred when the individuals were acting for and on behalf of the publisher Dutton, a New York citizen:

- Ben Sevier: editor of the Book, employee of Dutton;
- Christine Ball: public relations, employee of Dutton;
- Peter Ragone: Outside public relations consultant hired by Dutton;
- Mark Fabiani: Outside public relations consultant hired by Dutton;
- Public Relations Team: individuals hired by Dutton referenced above;
- Brian Tart: CEO of Dutton; and
- Alex Gigante: in house counsel for Dutton.

13. Mr. Podlaski told me that I had no obligation to submit the book for a prepublication review and he told me that he had vetted the Book and removed any sensitive information so that I could proceed with publication of the Book without risk of civil or criminal liability. This advice was conveyed multiple times, to Ms. Cheney as my agent and to Dutton my

publisher, to persuade them to proceed with the publication of the book. I follow this advice and submitted the Podlaski-edited manuscript to Dutton, and this became the published version of the Book.

14. As a result of the publication of the Book in this form, the United States Government has threatened to file a civil forfeiture action against me for having published the Book without a prepublication review and for having disclosed in the Book certain designated sensitive information in violation of my contractual and fiduciary duties to the Government.

15. As a result of the publication of the Book in this form, the Department of Justice has initiated a criminal investigation against me to determine whether, by publication of the Book, I have violated espionage, treason, or other criminal laws.

16. The threats of both civil and criminal proceedings against me are still pending. I have retained Mr. Robert Luskin, a Washington DC attorney, to represent me and he has been involved in negotiations to resolve these civil and criminal disputes. The fees I have paid for his representation are ongoing and are far in excess of the diversity jurisdictional limits of this court. In these negotiations, Mr. Luskin has discussed specific information the Government found objectionable in the Book. I have acknowledged my errors and I am committed to accepting my responsibility for my mistakes (even though they resulted from my following the advice of Defendants). My commitment includes my willingness to forfeit income to the Government. While negotiations with the Government are ongoing and are confidential, I have reason to believe that a settlement will be reached long before this matter is called to trial.

17. My second book, *No Hero,* was submitted to a prepublication review and the book has now been published and sold more than 100,000 copies. The Publisher's Note at the front of this book accurately describes the prepublication review as follows:

The author submitted this manuscript for review by the Defense Office of Prepublication and Security Review (DOPSR) at the United States Department of Defense. Some material not essential to the book was removed or rewritten during the review process. In some cases no agreement between the author and the DOPSR could be reached, and in those instances the passages in question have been redacted.

18.     If Mr. Podlaski had advised me that I had an obligation to submit my first Book to a prepublication review, I would have done so. If Mr. Podlaski had just advised me that there was uncertainty as to whether I needed to submit the Book for prepublication review and then advised me of the consequences if I did not submit the Book but it later turned out I had such an obligation, I would have avoided those risks by submitting the book for a prepublication review.

19.     Based upon my experience with the prepublication review process on my second book and based upon my experience with negotiations with the Government over the lack of a prepublication review on my first book, and based upon the legal advice I have received now, I have no doubts about my ability to submit proof that the Book would have survived the prepublication review process, been published, and still resulted in the same or greater book sales and the same or greater income to me, without the attendant threats I now face.

20.     Based upon my experience with the prepublication review process on my second book and my experience and the advice of my lawyers in connection with negotiations with the Government over the disclosure of sensitive information in the Book, I have no doubts about my ability to submit proof that I would not be facing the same civil and criminal threats if Mr. Podlaski had removed the sensitive information the Government finds objectionable in his vetting of the Book, even if I had not submitted the Book for a prepublication review.

21.     Mr. Podlaski knew or should have known that I could be sued by Dutton or by the Government in New York if I wrongfully delivered the Book for publication in New York with

confidential information still inside and without a prepublication review and he knew all those working with me could be sued as well if he did not do his job right.

22. Further Affiant saith not.

Dated: New York, New York
~~April __, 2015~~ *13*
2 May 2015

Matthew Bissonnette

Sworn to before me this 2 May 2015
~~Day of April, 2015~~ *13*

_____
Notary Public

**Notary Certificate Attached**

# California All-Purpose Acknowledgement

State of California  } SS.
County of Sonoma

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

On May 2, 2015 before me, _____Lola Ruzzo,_____ Notary Public
personally appeared __Matthew Scott__
                              Name(s) of Signer(s)

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature __Lola Ruzzo__ (Seal)

LOLA RUZZO
COMM. #2105042
NOTARY PUBLIC · CALIFORNIA
SONOMA COUNTY
My Comm. Expires March 28, 2019

_____Optional_____

Though the information below is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent removal and reattachment of this form to another document.

**Description of the Attached Document:**

Title of Type of Document: _____

Document Date: _____ Number of Pages: _____

Signer(s) Other Than Named Above: _____