UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MATTHEW BISSONNETTE,<br><br>Plaintiff,<br><br>-against-<br><br>KEVIN PODLASKI and<br>CARSON BOXBERGER, LLP,<br><br>Defendant. | Civil Action No.: 1:14-CV-8810<br>(JMF)<br><br><br>**AFFIDAVIT OF ELYSE CHENEY<br>IN SUPPORT OF RESPONSE TO<br>MOTION TO DISMISS** |

STATE OF NEW YORK   )
                     )     ss.:
COUNTY OF NEW YORK )

     **Before me the undersigned authority on this day personally appeared Elyse Cheney who after being by me first duly sworn deposes on her oath and states as follows:**

     1.     My name is Elyse Cheney. I am over the age of 21 and I am fully capable, competent and authorized to make the following statements. The factual matters set forth herein are within my personal knowledge unless it is indicated that they are based upon my best information and belief and are are true and correct.

     2.     I am a resident and citizen of New York City, New York.  I am, by profession, a literary agent and I have been so employed for 19 years.

     3.     In 2005, I formed Elyse Cheney Literary Associates, LLC, (a limited liability corporation organized and existing under the laws of the State of New York). The primary business purpose of Elyse Cheney Literary Associates, LLC is to serve as agent for authors and assist them in all aspects of the publication of their writings.  I am the sole and managing member of Elyse Cheney Literary Associates, LLC.  The principal and only place of business of

Elyse Cheney Literary Associates, LLC is New York City, New York.  All of my activities described herein are in my capacity as a principal of Elyse Cheney Literary Associates, LLC.

4.      Plaintiff Matthew Bissonnette began doing business with me in New York in late 2011, when we discussed the idea of him writing a book about his career. These discussions culminated in Mr. Bissonnette entering into several contracts to do business in New York. One of these contracts is with me. A true and correct copy of my contract with Mr. Bissonnette dated December19, 2011 is attached to the Declaration of Coyt Randal Johnston. This contract designates me as Mr. Bissonnette's "sole and exclusive agent" with respect to his book length works, the first of which was later entitled, *No Easy Day* (the Book).

5.      Consistent with my contract, I served as the agent for Mr. Bissonnette on all matters related to the Book and I performed my services as his agent in New York.  My duties included communicating with Defendants acting as the attorney for Mr. Bissonnette. My many communications with Defendants were via telephone calls and emails and are described in the bills of Defendants, true and correct copies of which are attached to the declaration of Randy Johnston.

6.      All communications between me and Defendants occurred with me in New York acting as the agent of Mr. Bissonnette.  I requested of Defendants and received from Defendants legal advice for Mr. Bissonnette. When Defendants communicated with me in New York, they were communicating with Mr. Bissonnette pursuant to my agency relationship with him.

7.      In addition to his contract with me, Mr. Bissonnette also entered into a contract with Dutton, an imprint of Penguin Publishing Group, a division of Penguin Random House LLC (formerly, Penguin Group (USA) Inc.), 375 Hudson Street, New York, New York 10014 (the

Publisher or Dutton) for the publication of the Book. A true and correct copy of his contract with Dutton is attached to the Declaration of Coyt Randal Johnston.

8.    From the beginning, Mr. Bissonnette, Dutton, and I knew there would be issues involving Mr. Bissonnette's possession of confidential information. The Dutton contract obligated Mr. Bissonnette to submit a book length work of original writing that was free of classified or confidential information and was in compliance with his secrecy contracts with the U.S. government. This subject was discussed with the Publisher and the Publisher agreed to pay an amount towards the cost of an attorney to advise Mr. Bissonnette this subject, to facilitate the publication of the Book.

9.    As agent for Mr. Bissonnette, and because Mr. Bissonnette was attempting to keep his identity confidential, I assisted him with locating an attorney to advise him on his obligation to write the Book without violating his obligations of confidentiality. I am the one who called Mr. Podlaski to discuss his representing Mr. Bissonnette in early January 2012. In that first phone call, I identified myself as a literary agent in New York City, New York and told Mr. Podlaski I was representing an unidentified Navy SEAL who wanted to write a book about his service as a Navy SEAL and his involvement in the raid that resulted in the death of Osama bin Laden. I told him that both the publisher and this unidentified Navy SEAL wanted to ensure that the Book complied with the author's obligations of confidentiality to the U.S. government. I informed Mr. Podlaski that the publisher would be Penguin or Dutton, a publishing house located in New York City, New York. At some point, I forwarded Mr. Podlaski a copy of the proposed contract with the Publisher.

10.    Mr. Podlaski and I had several telephone calls concerning the matter prior to him being retained. Mr. Podlaski was aware at all times that calls from me were coming from New

York and his calls to me were being directed to New York. Mr. Podlaski was aware that the job he was being hired to do consisted of advising on Mr. Bissonnette's contracts in New York involving the Book.

11.     Mr. Podlaski was aware that I was the agent for Mr. Bissonnette and that his representation of Mr. Bissonnette required that he deal with me as agent of Mr. Bissonnette, which he did. This was important because Mr. Bissonnette was trying to still preserve his anonymity because of concerns for his family's safety as a result of the subject matter of his Book, which he knew would (and did) engender death threats.

12.     Defendants were hired to represent Mr. Bissonnette in connection with this book-writing business venture in New York, his contract with Dutton, and his confidentiality obligations to the U.S. government. On or about January 17, 2012, Mr. Podlaski sent me - via email - the proposed engagement letter with his law firm, a true and correct copy of which is attached to the Declaration of Coyt Randal Johnston.  Mr. Bissonnette's name was left blank because Mr. Podlaski did not know his name. Mr. Bissonnette later handwrote his name on the first page of the engagement letter, signed it on the last page, and returned it to me. I then returned the engagement letter to Mr. Podlaski - via email from my New York office.

13.     Mr. Podlaski's engagement letter describes the services he was to provide as follows:

      a. Consult with us on and propose language for Mr. Bissonnette's contract with Dutton - governed by the laws of New York;

      b. Ensure Mr. Bissonnette complied with all his obligations under any agreements with the United States government; and

      c. Review the manuscript to ensure Mr. Bissonnette did not release classified or classifiable information in the Book.

Mr. Podlaski was to send his bills in care of me at my New York address.

d.      Mr. Podlaski discharged his duties as attorney for Mr. Bissonnette by numerous emails and telephone calls to me at my office in New York, as well as to Dutton. Mr. Podlaski admits to these communications and sought payment for them in his monthly bills. The specific legal advice on which Mr. Bissonnette's malpractice claim is predicated (no requirement of a prepublication review and the book has now been vetted and is free of classified information) is advice that Defendants conveyed to me in New York as agent for Mr. Bissonnette.

e.      True and correct copies of a sample of the many comments and suggestions Mr. Podlaski sent to me in New York are attached as exhibits to the declaration of Randy Johnston.

f.      Mr. Podlaski was aware that Dutton was headquartered in New York and that the Dutton contract was governed by the laws of the State of New York. Mr. Podlaski was aware that this Dutton contract required Mr. Bissonnette to provide a publishable manuscript to Dutton, free of classified or otherwise sensitive information. Mr. Bissonnette's compliance with the Dutton contract was wholly dependent upon Mr. Podlaski doing the job for which he was hired.

g.      For the consultation on the Dutton contract, Defendants sent bills to me at my office in New York. Upon receipt of a bill, my office arranged for payment via a check drawn upon my company's client escrow account. A true and correct copy my company check to Carson Boxberger in the amount of $5,380, paying Defendants 'invoice for work performed in January 2012, is attached to the Declaration of Coyt Randal Johnston.

h.      Once Mr. Podlaski's work shifted to his review of the manuscript, Defendants sent bills directly to Dutton in care of its general counsel in New York. I believe Dutton then arranged for payment of Defendants' bills from their New York office.

i.      Mr. Podlaski also had numerous communications with agents and representatives of Dutton in New York, as attorney for Mr. Bissonnette. I was copied on some of these emails

and I was a participant in some of these conference calls, but there were also emails and conference calls between Mr. Podlaski and representatives of Dutton in which I was not a participant. These communications are also described by Mr. Podlaski in the fee statements. I have identified below the names of some of the people with whom Mr. Podlaski reports having telephone calls, conferences, email exchanges or letters, and their role and association with Dutton.  On information and belief, all the communications described in the fee statements between Mr. Podlaski and the referenced individuals occurred when the referenced individuals were acting for and on behalf of the publisher Dutton, a New York citizen.

- Ben Sevier: editor of the Book, employee of Dutton;
- Christine Ball: public relations, employee of Dutton;
- Peter Ragone: Outside public relations consultant hired by Dutton;
- Mark Fabiani: Outside public relations consultant hired by Dutton;
- Public Relations Team: individuals hired by Dutton referenced above;
- Brian Tart: CEO of Dutton; and
- Alex Gigante: in house counsel for Dutton.

j.      Mr. Podlaski knew I and those working with me and the other entities and people in New York involved with this Book wanted assurances that it would not disclose confidential information that could be used by the enemies of this country and would not end up harming us or Mr. Bissonnette.

k.      Further Affiant saith not.


Dated: New York, New York
       April ___, 2015
       May 5, 2015

                                        _____
                                        Elyse Cheney

Sworn to before me this 6

Day of April, 2015.

_____

Notary Public

CHRISTOPHER J NASTRI
Notary Public - State of New York
NO. 01NA6271503
Qualified in Richmond County
My Commission Expires _____